# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DEANZA BLACK, et al.,

    Plaintiffs,

v.

OFFICER RYAN MCBRIDE, et al.,

    Defendants.

Case No. 2:06-CV-01394-KJD-GWF

**ORDER**

    Presently before the Court is Defendants' Motion for Summary Judgment (#19). Plaintiff filed an Opposition and Counter Motion to Withdraw as Counsel for Plaintiffs Smith and Sesson (#24), to which Defendants filed a Reply (#27). Defendants also filed a Notice of Non-Opposition (#28) to the motion to withdraw. Accordingly, the Court grants the Motion to Withdraw as Counsel for Plaintiffs Smith and Sesson.

    Also before the Court is Defendants' Motion in Limine to Exclude the Testimony of D.P. Van Blaricom (#35). Plaintiffs filed a response in opposition (#39/40) to which Defendants replied (#41). The Court denies the Motion in Limine as moot, because even crediting the testimony of Van Blaricom, the Court finds there has been no constitutional violation in this case and grants the motion for summary judgment.

## I. Facts

This case arises from an incident on July 4, 2006, in Las Vegas, Nevada, at the intersection of Flamingo Road and Las Vegas Boulevard (the "Strip"). Las Vegas Metropolitan Police Officers Ryan McBride and Noel Lefebvre, were on duty as bike patrol on the Strip and conducting a "Safe Strip" program. The police department was anticipating the large crowds that usually attend the annual fireworks display for the 4th of July celebration in the area of the Strip. The officers were dressed in the typical uniform for police officers operating bicycles.

They were traveling northbound along Las Vegas Boulevard towards Flamingo Road when their attention was drawn to a Camaro stopped on Flamingo Road facing west and far enough across the crosswalk to be impeding traffic in the right-hand travel lane for northbound traffic on Las Vegas Boulevard. Loud music was also heard emanating from the vehicle. Officer Lefebvre positioned himself and his bicycle on the driver's side of the vehicle while Officer McBride positioned himself to the back on the passenger side in a backup position. Officer Lefebvre told the driver to turn off the vehicle and received no positive reaction. According to Officer Lefebvre, the driver threw his hands up in the air, looked angry, and at one point looked over his right shoulder.

At this point Officer Lefebvre recalls taking off his helmet, approaching the car, and in a loud voice instructing the driver to turn off the vehicle. Receiving no response and concerned that the driver might not speak English or understand, the office remembers putting his right arm in the window of the car approximately a hand length and making a turning symbol with his hand to show the driver he should turn off the ignition. Officer McBride recalled that after Officer Lefebvre put his hand in the window, the driver looked over his right shoulder as though he were going to run and then the car took off with the tires screeching and smoking.

A cab driver, James Yagle, whose vehicle was blocked by the Camaro, testified he saw Officer Lefebvre leaning on the window of the Camaro when it suddenly started going forward. At that point, according to Yagle, Officer Lefebvre went in the window further, leaving the bicycle to collapse behind him. The passengers in Yagle's cab also testified similarly to the fact that the officer

was straddling his bike, leaning on the car, and went into the window further only after the car took off suddenly.[1]

The Camaro, with Officer Lefebvre hanging from the driver's side window, turned right on Las Vegas Boulevard and hit a light pole, coming to a sudden stop. At this point the air bag deployed in response to the collision and Officer Lefebvre was rendered unconscious. Officer McBride, from his vantage point saw the airbag deploy. He gave the command for the driver to stop and get out. Instead he observed the driver put the car into reverse and look over his shoulder again. According to Officer McBride, he believed that the driver was either going to slam Officer Lefebvre against the taxi into which he was backing, or another vehicle, or run over him. At this point Officer McBride fired a single shot at the driver, later identified as Tarance De Shon Hall, hitting his mark. Officer Lefebvre then regained consciousness and noticed that the Camaro had gone backwards into the taxi and that the tires were smoking. Mr. Hall, was immediately pulled from his vehicle and medical help called. He later died as a result of the gunshot wound.

Defendants seek summary judgment claiming that on undisputed facts, the actions of both officers were absolutely appropriate and that no violation of Plaintiff's Constitutional rights occurred, that Defendants' actions were reasonable under the circumstances, and that Defendants' actions do not constitute excessive force.

**II.  Standard for Summary Judgment**

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See, Fed. R. Civ. P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. See, Celotex, 477 U.S. at 323.

---

[1] The slight inconsistencies in the statements of the witness are not material for purposes of the analysis which follows.

3

1  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial. See, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(e). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). Summary judgment shall be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. Analysis

To succeed on a personal capacity claim against a government official, Plaintiff must prove that the official, acting personally under color of state law, deprived Plaintiff of a Constitutionally protected right. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). Further, Plaintiff must pierce the official's qualified immunity. See Anderson v. Creighton, 483 U.S. 637, 638 (1987). Qualified immunity protects government officials performing discretionary functions from civil liability under federal law unless their conduct violates a "clearly established [federal] statutory or constitutional right[ ] of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, (1982).

The inquiry for determining whether qualified immunity exists consists of two steps. First, the court determines whether "[t]aken in the light most favorable to the party asserting the injury, [] the facts alleged show the officer's conduct violated a constitutional right[.]" Scott v. Harris, 127 S.Ct. 1769, 1774 (2007) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). If the answer is affirmative, the court then asks "whether the right was clearly established . . . in light of the specific context of the case." Id.[2] Here, the Court finds that no Constitutional violation occurred, and thus that the Defendants are entitled to qualified immunity. However, even if the Court were to determine

---

[2] The Court notes that while the Supreme Court recently held that this two-step analysis is no longer mandatory, it "continue[s] to recognize that the Saucier protocol is often beneficial." Pearson v. Callahan, 129 S.Ct. 808, 811 (2009).

4

that a Constitutional violation had occurred, Plaintiff is unable to pierce the Defendants' qualified immunity.  As such, Defendants are entitled to summary judgment as a matter of law.

**A.  Constitutional Violation**

**1. Unreasonable Search and Seizure**

The Fourth Amendment of the United States Constitution requires that an officer have probable cause before searching or seizing a person or his property.  See U.S. Const. amend. IV.  "Arresting officers have probable cause to make [a] warrantless arrest, if, at the time of arrest, facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense."  United States v. Hillison, 733 F.2d 692, 697 (9th Cir. 1984).

However, a police officer may seize a citizen for a brief investigatory stop if the officer has a reasonable articulable suspicion of criminal activity.  See Terry v. Ohio, 392 U.S. 1, 27 (1968).  The reasonableness of the officer's suspicion must be tested against the backdrop of the totality of the circumstances surrounding a challenged stop.  See Alabama v. White, 496 U.S. 325, 330 (1995).  It is well settled that "headlong flight—wherever it occurs—is the consummate act of evasion," and though flight is not necessarily indicative of wrong doing, "it is certainly suggestive of such."  Illinois v. Wardlow, 528 U.S. 119, 124 (2000).

Here, considering the totality of the circumstances, the Court finds that Defendants Lefebvre and McBride had reasonable suspicion to stop Plaintiff in furtherance of their investigation.  Specifically, the officers observed Hall's car to be blocking traffic in a congested intersection and apparently exceeding noise limits.  The events occurred on a major holiday when there was also considerable traffic and pedestrian activity.  Additionally, Hall's uncooperative response to Officer Lefebvre's requests to shut off the music or vehicle provided him with reason to inquire further.  Thus, Officer Lefebvre had a reasonable, articulable grounds to proceed with his investigation.

Additionally, Plaintiff's attempt to escape by suddenly accelerating his vehicle with the officer hanging out the window and his repeated refusal to stop, provided Defendants with the requisite probable cause to arrest him. After it became apparent that he was using his vehicle in a manner which put the lives of others at risk, the officers had adequate reason to resort to deadly force in order to prevent death or serious injury to themselves or others.

### 2. Excessive Force

The Fourth Amendment protects individuals against excessive use of force from government officials. See U.S. Const. amend. IV. However, if an officer's use of force is objectively reasonable under the circumstances, no constitutional violation occurred. See Graham v. Connor, 490 U.S. 386, 397 (1989). The reasonableness of an arrest or seizure must be assessed by "carefully considering the objective facts and circumstances that confronted the arresting officer or officers." Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994). The court must judge the reasonableness from the perspective of a reasonable officer on the scene rather than with the 20/20 vision of hindsight. See Graham, 490 U.S. at 396.

To determine whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment, the Court must balance the nature and quality of the intrusion of the individual's rights against the countervailing governmental interests at stake. See id. First, the Court must evaluate the type and amount of force inflicted in order to assess the gravity of the alleged intrusion on an individual's rights. See Chew, 27 F.3d at 1440.

The second issue the Court must address is the governmental interest involved by considering three factors: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Graham, 490 U.S. at 396. These factors must be balanced against the amount of force used in effectuating arrest, yet are not to be considered in a vacuum. See Chew, 27 F.3d at 1441. Further, excessive force claims are evaluated for objective

reasonableness based upon the information the officers had when the conduct occurred.  See Saucier, 533 U.S. at 207 (overruled on other grounds by Pearson, 129 S. Ct. at 815).

      Here, the Court finds that Defendants did not use excessive force in stopping Hall as he fled from the officers and commenced using his vehicle as a deadly weapon. Lefebvre's sticking his arm or even part of his body into the car did not amount to a Constitutional violation.

      Accordingly, the Court finds that Defendants did not violate Plaintiff's Fourth Amendment rights to be free from unreasonable search and seizure and to be protected from the use of excessive force.  Therefore, Defendants are entitled to Summary Judgment as a matter of law.

### B. Violation of Clearly Established Law

As stated above, in order to succeed on a personal capacity claim against a government official, Plaintiff must pierce the official's qualified immunity.  See Anderson, 483 U.S. at 638. Here, even if a Constitutional violation occurred, Plaintiff cannot pierce Defendants' qualified immunity, because under the factual scenario presented the violation was not clearly established. Thus, Defendants are entitled to Summary Judgment as a matter of law.

As stated above, qualified immunity shields a § 1983 defendant from civil liability for alleged harms arising from discretionary actions so long as the actions do not violate clearly established law of which a reasonable person would have known.  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  For an asserted right to be well established for immunity purposes, the unlawfulness of the officer's action must be apparent.  See Anderson, 483 U.S. at 640.  In other words, an officer has immunity if he could have reasonably believed his conduct was appropriate in light of well-settled law.  See Saucier, 533 U.S. at 204.

Here, Defendants could have reasonably believed their conduct was appropriate in light of well-settled law.  Specifically, the Officers had reasonable suspicion for an investigatory stop based on Hall's car blocking the intersection and the loud music.  Furthermore, Defendants have identified no well-settled law demonstrating that Officer Lefebvre's actions violated Defendants' rights. Furthermore, Hall was unresponsive to Officer Lefebvre's commands and uncooperative with the

officers in general.  Additionally, he attempted to flee and commenced using his car as a deadly weapon.  Thus, Officer McBride could have reasonably believed Plaintiff was going to kill or injure others in his attempt to leave the scene.  Therefore, Officer McBride's action in firing the shot that killed Hall is protected by qualified immunity.  Accordingly, Defendants Lefebvre and McBride are entitled to Summary Judgment as a matter of law.

### C. Proximate Cause

In order to establish liability for a § 1983 violation, a Plaintiff must establish that the circumstance was (1) cause in fact and (2) the proximate cause of the constitutional deprivation. Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).   Here, although the Plaintiff has established that Lefebvre possibly violated the policy of the Las Vegas Metropolitan Police Department against officers sticking their hands or other parts of their bodies inside of a suspect's vehicle, he has not established that such a violation was the cause of Hall's death.  The purpose of such a rule is unquestionably officer safety.  It had nothing to do with the events which were precipitated by Hall's attempt to flee.

Proximate cause in this instance is not a jury question.  See Springer v. Seaman, 821 F.2d 871, 876-77 (1st Cir.1987) (although the question of proximate causation [in a section 1983 action] is sometimes for the court and the sometimes for the jury, the court decides whether reasonable disagreement on the issue is tenable).

Traditional tort law defines intervening causes that break the chain of proximate causation. *Prosser and Keeton on Torts*  44, at 312 (5th ed. 1984).  This analysis applies in section 1983 actions.  See Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 561 (1st Cir. 1989) ("An unforeseen and abnormal intervention ... breaks the chain of causality, thus shielding the defendant from [section 1983] liability."); Dodd v. City of Norwich, 827 F.2d 1, 6 (2d Cir. 1987)("a policy [is] a proximate cause ... if [ ] intervening actions were within the scope of the original risk and therefore foreseeable"), *cert. denied,* 484 U.S. 1007 (1988).  Applying these principles to this case, we must

determine whether, as a matter of law, Hall's actions in attempting to flee and using his car as a deadly weapon were intervening causes which preclude liability for defendant officers.

To hold an individual defendant personally liable for damages under 1983, the causation inquiry must be focused on whether the individual defendant was in a position to take steps to avert the incident giving rise to the deprivation but failed to do so intentionally or with deliberate indifference. See Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Once Hall decided to flee and commenced using his car as a deadly weapon, the officers had little choice but to take immediate measures to stop the threat of serious bodily injury or death to themselves and others present. There is no evidence to suggest that Hall would have been shot for a traffic violation had he stayed put. However, there is evidence that illegal drugs were found in his system, a fact which may explain his irrational behavior.[3]

Plaintiff's argument that Lefbvre, by inserting himself into the vehicle, forced down the leg of Hall and that in turn forced Hall's foot down on the accelerator, is fanciful and unsupported. It ignores the fact that Hall could have moved his foot off the accelerator or used his other foot on the brake, to say nothing of how an unconscious Lefebvre could have placed the car in reverse. Placing a vehicle in reverse requires brake-foot and hand coordination that would be extremely difficult, if not impossible, for someone hanging half in the window, even in a state of consciousness.

**D. Municipal Liability of Las Vegas Metropolitan Police Department**

Plaintiff further alleges that Las Vegas Metropolitan Police Department is liable because the officers' unlawful actions were the result of a local rule, policy or custom. However, Plaintiff has failed to present sufficient facts to maintain his allegation that the officers' actions were unlawful or the result of an unlawful policy, rule, or custom. The action of the officer in sticking his hand or any other part of his body into the Hall vehicle, even if considered a violation of police policy, was not the proximate cause of Hall's death. The policy against sticking one's hand into a vehicle is for

---

[3] The toxicology report done on Hall's blood by the coroner's office found cocaine, PCP and marijuana.

officer safety, not to protect detainees.  There are circumstances in which it is disregarded, such as the removal, from a vehicle, of an uncooperative suspect or person under arrest.  The undisputed evidence in this case is that Hall's decision to flee and commence using his vehicle in a fashion which presented the risk of serious bodily injury of death to persons in the immediate vicinity, set in motion the chain of events leading to his death, not the act of the officer in sticking his hand into the vehicle to demonstrate turning off the ignition.

Plaintiff's own expert agreed that there is nothing wrong with the training given by the employer. There is no evidence of a failure to train on the part of Las Vegas Metropolitan Police Department that can serve as a basis for employer liability under the undisputed facts of this case. Accordingly, Defendant Las Vegas Metropolitan Police Department is entitled to Summary Judgment as a matter of law on Plaintiff's claims for inadequate training.

### E. State Law Causes of Action

Plaintiff's state law tort claims for Wrongful Death, Negligence and Negligent Supervision and Training also fail for lack of evidence that any unlawful independent actions on the part of the officers were the proximate cause of Hall's death.  Even if the Court did not dismiss the state law claims, it would decline to exercise supplemental jurisdiction.  A district court has discretion to decline to exercise supplemental jurisdiction over a claim if all claims over which it has original jurisdiction have been dismissed.  See 28 U.S.C. § 1367(c).  Since the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over Plaintiff's state law claims.

### IV.  Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (#19) is **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's Counter Motion to Withdraw as Counsel for Plaintiffs Smith and Sesson (#24) is **GRANTED**;

1 **IT IS FURTHER ORDERED** that Defendants' Motion in Limine to Exclude the Testimony of D.P. Van Blaricom (#35) is **DENIED as moot**;

**IT IS FURTHER ORDERED** that the Clerk of the Court enter **JUDGMENT** for Defendants and against Plaintiffs.

DATED this 30th day of March 2009.

_____
Kent J. Dawson
United States District Judge